# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRUIT

| | | |
|---|---|---|
| **DONNA ROBERTS,** | **)** | **Case No. 23-3789** |
| | **)** | |
| **Petitioner-Appellant,** | **)** | |
| | **)** | |
| **v.** | **)** | |
| | **)** | |
| **TERI BALDAUF, Warden,** | **)** | **DEATH PENALTY CASE** |
| | **)** | |
| **Respondent-Appellee.** | **)** | |

---

## PETITIONER-APPELLANT DONNA ROBERTS' MERIT BRIEF

---

STEPHEN C. NEWMAN (0051928)
Federal Public Defender
CALLAND M. FERRARO (0093439)
Assistant Federal Public Defender
JILLIAN S. DAVIS (0067272)
Research and Writing Attorney
Office of the Federal Public Defender,
Northern District of Ohio
Capital Habeas Unit
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 (o); (216) 522-1951 (f)
Calland_Ferraro@fd.org
Jillian_Davis@fd.org

*Counsel for Petitioner-Appellant*
*Donna Roberts*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................................... 1

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF THE ISSUES...................................................... 1

INTRODUCTION ............................................................... 2

STATEMENT OF THE CASE........................................................ 4

    I.   Guilt phase of trial ................................................. 4

    II.  Penalty phase of trial .............................................. 7

    III. First direct appeal and first resentencing........................... 9

    IV. Second direct appeal and second resentencing......................... 12

    V.  The mitigation evidence proffered, but not considered, in state court ......... 14

    VI. Federal habeas proceedings .......................................... 18

    VII. Nathaniel Jackson's proceedings..................................... 19

SUMMARY OF THE ARGUMENT ..................................................... 21

ARGUMENT ................................................................... 22

    I.   The Eighth and Fourteenth Amendments guarantee the right to present relevant mitigating evidence at capital sentencings........................... 22

    II.  Roberts was denied her right to present mitigating evidence at sentencing. 28

    III. The Ohio Supreme Court's resentencing exception is contrary to, and an unreasonable application of, clearly established federal law as determined by the Supreme Court. ....................................................... 31

    IV. The District Court's reasoning is wrong and conflicts with this Court's binding precedent........................................................ 38

    V.  The *Lockett* violation was not harmless. ............................ 42

CONCLUSION................................................................. 45

CERTIFICATE OF COMPLIANCE................................................... 46

CERTIFICATE OF SERVICE ..................................................... 46

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............. 47

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page No.**

*Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007)............................................ 26, 42

*Carter v. Mitchell*, 829 F.3d 455 (6th Cir. 2016).....................................................31

*Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007)............................ 3, 12, 26, 27, 31, 41

*Disciplinary Couns. v. Stuard*, 901 N.E.2d 788 (Ohio)..............................................8

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ........................................ 2, 24, 28, 32

*Gardner v. Florida*, 430 U.S. 349 (1977)................................................................40

*Hitchcock v. Dugger*, 481 U.S. 393 (1987) ........................................ 25, 28, 40, 42

*Jackson v. Cool*, 111 F.4th 689 (6th Cir. 2024)................................................ *passim*

*Jackson v. Houk*, 4:07-cv-00880, 2021 WL 698590 (N.D. Ohio Feb. 23, 2021)....20

*Lockett v. Ohio*, 438 U.S. 586 (1978) ............................................................ *passim*

*Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999).........................................................44

*McKoy v. North Carolina*, 494 U.S. 433 (1990) ......................................................26

*Mills v. Maryland*, 486 U.S. 367 (1988)............................................................ 26, 34

*Penry v. Lynaugh*, 492 U.S. 302 (1989) ..................................................................43

*Pepper v. United States*, 562 U.S. 476 (2011) ...........................................................2

*Sivak v. State*, 731 P.2d 192 (Idaho 1986)...............................................................31

*Skipper v. South Carolina*, 476 U.S. 1 (1986) .................... 2, 24, 25, 28, 33, 40, 44

*Smith v. Cook*, 956 F.3d 377 (6th Cir. 2020).........................................................43

*Smith v. Spisak*, 558 U.S. 139 (2010) ....................................................................34

*Spaziano v. Singletary*, 36 F.3d 1028 (11th Cir. 1994) ..........................................34

*State v. Gilbert*, 35 N.E.3d 493 (Ohio 2014) .........................................................38

*State v. Green*, 738 N.E.2d 1208 (Ohio 2000)........................................................45

*State v. Jackson*, 73 N.E.3d 414 (Ohio 2016).........................................................20

*State v. Jackson*, 839 N.E.2d 362 (Ohio 2006)........................................................6

*State v. Jackson*, 941 N.E.2d 1221 (Ohio Ct. App. 2010) .....................................19

*State v. Kirkland*, 157 N.E.3d 716 (Ohio 2020) ....................................................34

*State v. Roberts*, 78 N.E.3d 851 (Ohio 2017) ........................................................14

*State v. Roberts*, 850 N.E.2d 1168 (Ohio 2006) ................................... 9, 30, 37, 39

*State v. Roberts*, 998 N.E.2d 1100 (Ohio 2013) .............................................. *passim*

*Sumner v. Shuman*, 483 U.S. 66 (1987)......................................................29

*Tennard v. Dretke*, 542 U.S. 274 (2004) ............................................... 28, 40

*Thornell v. Jones*, 144 S. Ct. 1302 (2024) ...............................................44

*Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010)................................... 22, 30

*United States v. Elbe*, 774 F.3d 885 (6th Cir. 2014)..................................30

*Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020) ...........43

*Williams v. Oklahoma*, 358 U.S. 576 (1959) ...........................................36

*Williams v. Taylor*, 529 U.S. 362 (2000) ................................................32

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ................................ 22, 23

## Statutes

28 U.S.C. § 2254 ...........................................................................22

28 U.S.C. § 2254(d) .......................................................................22

28 U.S.C. § 2254(d)(1)................................................ 1, 20, 21, 31, 32

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1294 ...........................................................................1

28 U.S.C. § 2253(c) .......................................................................1

Ohio Rev. Code § 2929.025(A)(1) ...................................................43

Ohio Rev. Code § 2929.03(D)(1) ....................................................33

Ohio Rev. Code § 2929.03(D)(2) ....................................................34

Ohio Rev. Code § 2929.03(D)(3) ....................................................34

Ohio Rev. Code § 2929.04(A) ........................................................45

Ohio Rev. Code § 2929.05(A) ........................................................36

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Petitioner-Appellant Donna Roberts requests oral argument. This appeal is from the denial of a petition for writ of habeas corpus by a state prisoner under a sentence of death. Roberts respectfully submits that oral argument could aid the Court in the disposition of this appeal.

## JURISDICTIONAL STATEMENT

The district court denied relief and entered judgment dismissing the case on August 15, 2023. Order, R.31. The district court issued a certificate of appealability on one claim. *Id.* at PageID # 13185. The district court denied Roberts' motion to amend judgment on September 14, 2023. Order, R.35. Roberts filed a timely notice of appeal on September 27, 2023. Not. of App., R.36. This Court has jurisdiction under 28 U.S.C. §§ 1291, 1294, and 2253(c).

## STATEMENT OF THE ISSUES

1. Was Roberts deprived of her Eighth and Fourteenth Amendment rights under *Lockett v. Ohio*, 438 U.S. 586 (1978), and the long line of Supreme Court cases applying *Lockett*, when the trial court barred her from presenting any mitigation evidence—other than an unsworn statement—before it sentenced her to death at resentencing proceedings?

2. Did the Ohio Supreme Court contradict or unreasonably apply Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1), when it held that *Lockett* and its

progeny are inapplicable to resentencing proceedings held after a prior death sentence has been vacated as unconstitutional and during which the trial court has to make a new decision between life and death?

## INTRODUCTION

Deeply embedded in our criminal-justice system is the idea that "the possession of the fullest information possible concerning the defendant's life and characteristics" is "essential" to the selection of an appropriate sentence. *Pepper v. United States*, 562 U.S. 476, 488 (2011). And in the capital context, "individualized consideration" is more than just essential—it is a "constitutional requirement" given that "the imposition of death by public authority is so profoundly different from all other penalties." *Lockett v. Ohio*, 438 U.S. 586, 605 (1978).

Based on these principles, the Supreme Court has long held that, in a capital case, "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence'" that "the defendant proffers as a basis for a sentence less than death." *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) and *Lockett*, 438 U.S. at 604). "When the choice is between life and death" the failure to consider such evidence is "incompatible with the commands of the Eighth and Fourteenth Amendments." *Lockett*, 438 U.S. at 605.

The state courts here defied these commands. During Roberts' first

2

sentencing proceedings, the Judge secretly asked the prosecutors to draft the opinion sentencing her to death.  Unsurprisingly, the Ohio Supreme Court held that this ex parte collaboration rendered Roberts' death sentence constitutionally infirm, vacated the sentence, and remanded for the trial court to make a new sentencing determination.  At her resentencing proceedings, Roberts attempted to introduce mitigating evidence, including evidence that did not exist at the time of her first sentencing proceedings over four years earlier.  The trial court denied her that right. It instead permitted her only to make an unsworn statement in allocution, and then sentenced her to death a second time.  The Ohio Supreme Court ultimately affirmed the death sentence, holding that *Lockett* and its progeny are categorically inapplicable to *re*sentencing proceedings.

That decision, however, squarely conflicts with clearly established Supreme Court precedent, not to mention binding precedent from this Court.  At Roberts' resentencing, the trial court was tasked with choosing "between life and death," so the Constitution required it to permit Roberts to introduce mitigating evidence bearing on that decision.  And this Court has held—twice—that the Ohio Supreme Court's resentencing exception is both contrary to, and an unreasonable application of, that clearly established principle.  *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007); *Jackson v. Cool*, 111 F.4th 689 (6th Cir. 2024).  The Warden admits this, conceding that binding circuit precedent "directly controls" this case in Roberts' favor.  *See* En.

Banc Pet., *Jackson v. Cool*, No. 21-3207 (6th Cir.), Doc.63, Pages 7, 9. Accordingly, Roberts is entitled to a new sentencing proceeding where she can present all relevant mitigating evidence.

And that evidence is compelling. It reveals that Roberts was sexually abused at a young age and witnessed her father physically and emotionally abuse her mother. Still, she was able to grow into an independent woman who did great acts of charity and supported her family members in times of need. She did this despite a long and documented history of mental illness. Before her conviction, several car accidents left her with cognitive deficiencies. She had been diagnosed with bipolar disorder, hallucinations, and depression and received social security income as a result of these illnesses. The year before the crime, she had attempted suicide and was committed to a psychiatric hospital. And after her conviction, her battle with these illnesses persisted in prison.

This evidence was vital to the trial court's decision on whether to sentence Roberts to death, yet the state courts refused to consider it. A writ of habeas corpus is therefore necessary to correct this constitutional error.

## STATEMENT OF THE CASE

### I.    Guilt phase of trial

In December 2001, the State of Ohio charged Roberts with aggravated murder for allegedly conspiring with Nathaniel Jackson, at the time a prison inmate with

whom she was having an intimate relationship, to kill Roberts' ex-husband and roommate Robert Fingerhut. The State presented the following evidence during the guilt phase of the trial.

In the early hours of December 12, 2001, a notably shaken Roberts called 911. Trial Tr., R.11-3, PageID # 5454, 5456–63. Police arrived to find Roberts visibly distraught outside her home. *Id.* at PageID # 5429. They discovered Fingerhut laying in the entrance to the home from the garage with multiple gunshot wounds. *Id.* at PageID # 5430. They also noticed that Fingerhut's car was not in the garage, and they later recovered the vehicle not far from the residence where Jackson was staying with friends (as he had recently been released from prison). *Id.* at PageID # 5908, 5931.

Police testified that, while they were investigating the scene, Roberts exhibited "emotional highs and lows." *Id.* at PageID # 5435. Some officers testified that they thought she was fake crying, *id.*, while others stated it appeared that she had truly been crying. *Id.* at PageID # 6138, 6249. (An acquaintance also testified that Roberts was later acting "odd" at Fingerhut's funeral, though the witness did not elaborate. *Id.* at PageID # 5492.).

The same day, police discovered letters between Roberts and Jackson in Roberts' bedroom and the trunk of her car. *Id.* at PageID # 6163–65, 6175–76. Roberts had made no effort to hide those letters before calling the police to her home.

*Id.* at PageID # 6273–76.  The letters were suggestive of a plan for Jackson to kill Fingerhut once Jackson was released from prison.  *See* Letters, R.12-17 through R.12-23.  When asked about the letters, Roberts said they constituted mere prison talk and that she was just telling Jackson what he wanted to hear.  Trial Tr., R.11-3, PageID # 6202.  Police thereafter called the Lorain Correctional Institution, where Jackson had been incarcerated, to obtain copies of phone calls between Roberts and Jackson.  *Id.* at PageID # 5420.  In those calls, Jackson again proposed his plan.  *See* Call Tr., R.12-24, PageID # 12466–630.  Roberts, however, "expressed misgivings about what Jackson was planning to do to Fingerhut."  *State v. Jackson*, 839 N.E.2d 362, 368–70 (Ohio 2006); *see also, e.g.*, R.12-24, PageID # 12625–26.

An employee at the Days Inn in Boardman, Ohio testified at trial that he had rented a room to Roberts on December 11, 2001, the day before the 911 call.  Trial Tr., R.11-3, PageID # 5651–62.  Blood stains were found in the hotel room that matched Jackson's DNA.  *Id.* at PageID # 5663–69, 6047–49.  An insurance agent also testified that Fingerhut had two life insurance policies designating Roberts as the beneficiary.  *Id.* at PageID # 5540–63.

During trial, the State never contended that Roberts was in the home at the time of the shooting.  Rather, it introduced testimony that, during the relevant time, she was seen driving near a Giant Eagle.  *Id.* at PageID # 6402, 5464–75.

Roberts was ultimately arrested on December 20, 2001, and she afterwards

6

helped police obtain Jackson's location at his friends' house, from which he was arrested. *Id.* at PageID # 6314–15. The State then charged her with aggravated murder for allegedly conspiring with Jackson to kill Fingerhut.

After the State presented the above evidence, the jury convicted Roberts on all counts, including complicity in aggravated murder. *Id.* at PageID # 6489–95.

## II.    Penalty phase of trial

Three days after the guilty verdict, Roberts informed the trial court that she wished to decline presenting mitigating evidence other than an unsworn statement. *Id.* at PageID # 6501. In her unsworn statement, Roberts mostly critiqued the guilt-phase evidence, the prosecutor, the police, and the media. *Id.* at PageID # 6532–79. Though she told the jury she was not admitting guilt, she asked them to return a death verdict. *Id.* at PageID # 6574–76. The jury obliged, recommending a death sentence. *Id.* at PageID # 6609.

When it came time for the trial-court judge—Judge John Stuard—to read his sentencing decision in open court, defense counsel noticed something strange. The prosecutor seemed to already possess the sentencing opinion and was following along with his own copy. *Id.* at PageID # 6644. Upon inquiry from the defense, Judge Stuard revealed that he had asked the prosecutor to draft the judicial opinion sentencing Roberts to death. *Id.* at PageID # 6645–51.

Subsequent testimony during Ohio Supreme Court disciplinary proceedings

7

further revealed the details of what had transpired. As it turned out, Judge Stuard had made the same unethical request of the prosecutors during Jackson's earlier trial. When Judge Stuard approached the prosecutor in Roberts' case, he handed over two pages of notes and told the prosecutor to draft a sentencing opinion modeled off the opinion in Jackson's case (which, again, Jackson's prosecutors had written). *See Disciplinary Couns. v. Stuard*, 901 N.E.2d 788, 790 (Ohio); *Jackson*, 111 F.4th at 693–94, 697–98; *see also Jackson v. Houk* (N.D. Ohio), No. 4:07-cv-00880-JG, R.47-8, PageID # 10627, 10649–51, 10654–55, 10675, 10722–23, 10728–30. Prosecutors then turned those two pages of notes into a 17-page opinion sentencing Roberts to death. *Stuard*, 901 N.E.2d at 790. Through a shared computer drive, Judge Stuard offered a few corrections and the prosecutors edited accordingly. *Id.*; *see also Jackson v. Houk*, No. 4:07-cv-00880-JG (N.D. Ohio), R.47-8, PageID # 10738–40. Defense counsel was unaware of this collaboration. Predictably, the Ohio Supreme Court ultimately imposed ethical sanctions on both the prosecutor and Judge Stuard for their conduct. *Stuard*, 901 N.E.2d at 792.

When, during Roberts' sentencing proceedings, defense counsel learned about this ex parte collaboration, they objected. Trial Tr., R.11-3, PageID # 6645. Judge Stuard nonetheless proceeded with sentencing, accepted the jury's recommendation, and sentenced Roberts to death. *Id.* at PageID # 6658. His accompanying opinion gave "very little weight" to her unsworn statement. *Id.* at PageID # 6637.

8

### III.    First direct appeal and first resentencing

On appeal, the Ohio Supreme Court affirmed Roberts' conviction but vacated the death sentence "because of the critical constitutional interests and notions of justice that are implicated by the prosecutor's participation in drafting the sentencing opinion." *State v. Roberts*, 850 N.E.2d 1168, 1172, 1188–90 (Ohio 2006).  The court found that such constitutional problems constituted "so severe a violation that independent reweighing cannot serve as an adequate remedy."  *Id.* at 1189.  It therefore "vacated" Roberts' sentence and ordered the trial court to "determine anew the appropriateness of the death penalty" and "conduct whatever other proceedings are required by law and consistent with this opinion."  *Id.* at 1190.

Before Judge Stuard on remand, Roberts procured new counsel for resentencing.  Resentencing counsel moved for release of records and for funds to obtain expert psychiatric assistance.  *See* Defense Motions, R.12-5, PageID # 8539–49, 8582–84, 8701–02.  Important here, they also moved to present mitigation evidence, including evidence (like prison records) that did not exist at the time of Roberts' first sentencing proceeding over four years earlier.  *Id.* at PageID # 8558–63, 8587–8604.

Judge Stuard denied those motions, finding that the case had been remanded from the Ohio Supreme Court "with one narrow issue involved and that is for me to do another independent review of the mitigating aggravating factors and to type my

9

findings to resubmit into this case." Resentencing Tr., R.11-4, PageID # 6669, 6702, 6706, 6731; *see also* Order, R.12-5, PageID # 8585.  In response, defense counsel noted that the family was present and ready to testify but, given the court's order, counsel proffered the evidence they would have presented if they had been permitted.  Resentencing Tr., R.11-4, PageID # 6702–04, 6727; *see also* Mot. to Proffer, R.12-5, PageID # 8587–8681, 8684–8700; Sentencing Mem., R.12-5, PageID # 8708–11; Prison Records, Doc.13-3; SSI & Medical Records, Doc.13-4, Pages 6–266.[1]  Yet Judge Stuard explicitly refused to consider that evidence, stating: "[h]ad the information that you have presented presently been presented at the other trial, I have no opinion on whether that would have made a difference or not." Resentencing Tr., R. 11-4, PageID # 6731.

Proceeding with resentencing, Judge Stuard permitted Roberts to make an unsworn statement in allocution.  *See* Resentencing Tr., R.11-4, PageID # 6707–26. In that statement, Roberts recounted her upbringing and her life leading up to the crime.  She disclosed that, as a young child, she was raped by an older cousin and repeatedly witnessed her father physically and emotionally abuse her mother.  *Id.* at PageID # 6707–08.  She explained that she had been in three major car accidents,

---

[1] To avoid confusion, "Doc." refers to ECF filings in this case: No. 23-3789 (6th Cir.).  This Court granted Roberts' motion to expand the record on appeal with these documents, per the parties' joint stipulation.  *See* Joint Stip., Doc.23; Order Granting Mot. to Expand, Doc.24.

each involving head injuries.  *Id.* at PageID # 6709–13.  The final accident in 1999 impacted her cognitive abilities.  *Id.*  She thereafter attempted suicide through CO2 poisoning and, as a result, was hospitalized in a psychiatric ward.  *Id.* at PageID # 6712–13.  She received social security disability benefits after the Social Security Administration found her disabled on account of her mental illnesses.  *Id.* at PageID # 6714–15.

Roberts additionally detailed her acts of charity throughout her life, including assisting a persecuted Ethiopian Jew get safe passage to Israel and assisting in reconstructive surgery for disfigured Israeli soldiers.  *Id.* at PageID # 6717–19.  In closing, she explained that, in her correspondence with Jackson, she "never initiated any talk of hurting anyone."  *Id.* at PageID # 6725.  She stated that she "never intended for anything like that to happen" and that she and Fingerhut "loved each other."  *Id.* at PageID # 6726.

Despite responding, "I never thought for a moment that you are a bad person," Judge Stuard again sentenced Roberts to death.  *Id.* at PageID # 6726, 6732.  In doing so, Judge Stuard found—but gave very little weight to—several mitigating factors: (1) Roberts was not the principal offender; (2) her letters to Jackson indicated Fingerhut may have abused her; and (3) she was "courteous, pleasant and properly addressed the Court at all times" during trial.  Order, R.12-5, PageID # 8728–31.  In addition, Judge Stuard again gave "very little weight to [her] unsworn statement"

11

before the jury. *Id.* at PageID # 8730.  Judge Stuard did not discuss Roberts'
unsworn statement in allocution at resentencing.

## IV.  **Second direct appeal and second resentencing**

On Roberts' second direct appeal, the Ohio Supreme Court rejected her claim
that the trial court's refusal to hear mitigating evidence at her resentencing violated
*Lockett v. Ohio*, 438 U.S. 586 (1978) and its progeny.  *State v. Roberts*, 998 N.E.2d
1100, 1105–09 (Ohio 2013).  The court acknowledged that "[i]t is a well-established
tenet of Eighth Amendment jurisprudence that the sentencer in a capital case may
'not be precluded from considering, as a mitigating factor, any aspect of a
defendant's character or record and any of the circumstances of the offense that the
defendant proffers as a basis for a sentence less than death.'" *Id.* at 1105 (emphasis
omitted) (quoting *Lockett*, 438 U.S. at 604).  But the court held that the long line of
*Lockett* precedent was inapplicable because those cases "involved the trial court's
exclusion of, or refusal to consider, evidence in the original sentencing proceeding"
rather than "a proceeding on remand." *Id.* at 1108.  In the court's view, those cases
did not "require[] the trial court to reopen the evidence after an error-free evidentiary
hearing had already taken place." *Id.*  The court acknowledged that the Sixth Circuit
in *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007) had found that conclusion to be an
unreasonable application of *Lockett*. *Id.* at 1107–08.  But the court simply declined
to follow *Davis*. *Id.*  As the concurring opinion explained, the court itself recognized

that "its analysis on this point is likely to be set aside by the federal courts on collateral review." *Id.* at 1119 (O'Neill, J., concurring in part).

The Ohio Supreme Court, however, again vacated Roberts' sentence because Judge Stuard had failed to consider her allocution at resentencing. *Id.* at 1115. The court held that "[u]nquestionably, the allocution contained information relevant to mitigation" and "the court could not, therefore, refuse to consider it" pursuant to *Lockett*. *Id.* at 1112–13. Judge Stuard's failure therefore violated Roberts' Eighth Amendment rights. *Id.* at 1114–15. And this failure meant "the sentencing opinion [was] so inadequate as to severely handicap [the court's] ability to exercise [its] power of independent review." *Id.* at 1115. It therefore vacated the death sentence and remanded for Roberts to be sentenced a third time.

Because Judge Stuard had since passed away, the case was assigned to a different judge. Resentencing Tr., R.11-4, PageID # 6771. That judge, too, barred the presentation of any evidence in mitigation, given the Ohio Supreme Court's prior holding. *Id.* at PageID # 6765. And in deciding the sentence, the judge "granted little to no weight to any of the mitigating factors outlined by Roberts in her allocution." *Id.* at PageID # 6792–93. The judge repeatedly noted that there was "no evidence" to support Roberts' statements in her allocution (including her claims about mental deficiencies), discounted the information in her allocution as mere claims or allegations, and intimated that Roberts was an untruthful person who was

only interested in "self-promotion." *Id.* at PageID # 6773, 6786, 6788–91. Roberts was therefore sentenced to death for a third time. *Id.* at PageID # 6794.

This time, the Ohio Supreme Court affirmed. *State v. Roberts*, 78 N.E.3d 851 (Ohio 2017). Like the trial court, the Ohio Supreme Court noted the lack of corroborating evidence for Roberts' statements made in allocution. *See, e.g.*, *id.* at 870 ("[H]er uncorroborated claims of an unhappy childhood are entitled to little weight, as is her claimed history of mental problems stemming from injuries resulting from traffic accidents."); *Id.* ("There is no other evidence of the statutory mitigating factors in this record.").

## V.    The mitigation evidence proffered, but not considered, in state court

During these state-court proceedings, as well as subsequent state post-conviction proceedings, *see* Pet., R.12-13, PageID # 10202–10398, Roberts proffered the mitigating evidence she would have introduced if the court would have let her. None of the state courts reviewing her claims considered it.

This evidence provided well-documented corroboration for Roberts' allocution. It confirmed that she suffered at least three car accidents throughout her life, with the final one in 1999 altering her behavior. Perry Aff., R.12-13, PageID # 10256; Raymond Aff., R.12-13, PageID # 10262–64; Raymond Letter, R.12-5, PageID # 8692; SSI Records, R.12-13, PageID # 10374; St. Joseph records, R.12-13, PageID # 10386–90; Raymond E-mail, R.12-5, Page ID # 8606. She completely

14

isolated herself from friends and family. *See* Perry Aff., R.12-13, PageID # 10256; Raymond Aff., R.12-13, PageID # 10264; Raymond E-mail, R.12-5, Page ID # 8606.

In 2000, the year before the crime, Roberts attempted suicide and was thereafter hospitalized in a psychiatric ward at St. Joseph's Hospital. *See* Raymond Aff., R.12-13, PageID # 10264; St. Joseph Records, R.12-13, PageID # 10342–56. The discharge summary from St. Joseph's noted:

> The immediate reason for this hospitalization was because of severe anxiety, agitation, depression, auditory and visual hallucinations and suicidal ideations and intention by $CO_2$ poisoning. The patient stated that she has been getting quite tense, restless and depressed lately, having frequent mood swings, losing interest in doing things, having difficulties concentrating and started hearing voices talking to her.

St. Joseph Records, R.12-13, PageID # 10342. Roberts was prescribed Remeron, Zyprexa, Vistaril, Premarin, Provera, Paxil, Depakote, and Risperdal. *Id.* The hospital's final diagnosis was "Bipolar disorder, circular type" and the "prognosis" was listed as "guarded." *Id.* at PageID # 10343.

Around this same time, Roberts applied for (and ultimately received) social security disability benefits based on her mental illnesses. SSI Records, Doc.13-4, Page 228. Fingerhut had contacted the Social Security Administration to urge the agency to provide Roberts with those benefits. He informed the agency that "nobody was more effervescent and bubbly than Donna was" before her accident—she "was a fantastic cook," "played tennis, and was an avid baseball fan." *Id.* at Pages 7–9. Yet after her car accident, she became "a changed person"—she was moody,

irrational, emotionally unstable, and experienced memory problems and severe mood swings. *Id.* at Pages 7–16.

The psychologist who performed the SSI evaluation, Dr. Donald Degli, found that Roberts had a full scale IQ of 65. Degli Report, R.12-13, PageID # 10381. He also noted that her "[i]nterpersonal functioning was particularly impaired" and she had a "marginal capacity to interact competitively in a competitive workplace." *Id.* at PageID # 10382. Dr. Degli's report noted that Roberts, when asked if she was a happy person, responded "Well, I used to be. Now- - there is no reason to be happy. I am waiting to die now … any second." *Id.* at PageID # 10381.

Prison records revealed that her mental illnesses persisted after the crime, consistently confirming her bipolar and depression diagnoses, cognitive impairment, hallucinations and delusional thinking, and her history of sexual abuse and witnessing family violence, likely resulting in post-traumatic stress disorder. *See* Prison Records, R.12-5, PageID # 8609–40; 8667–81; Prison Records, Doc.13-3, Pages 6–255; *see also* Records Summary, R.12-6, PageID # 8833–41; Records Summary, R.12-5, PageID # 8593–8603; Petition, R.10, PageID # 102–06. These records additionally note that Roberts, in prison, had to learn "to set appropriate [b]oundaries and not be so trusting of other inmates who will take advantage of her." Prison Records, Doc.13-3, Pages 90–91, 183. And they document that Roberts experienced sadness and traumatic flashbacks due to Fingerhut's death. *Id.* at Pages

16

19, 151, 206, 247; Prison Records, Doc.13-4, Page 405.

Counsel also proffered an expert report from Dr. James R. Eisenberg, an internationally recognized forensic psychologist. Eisenberg Aff., R.12-5, PageID # 8686–88; Eisenberg Aff., R.12-13, PageID # 10249–52. He stated that his review of Roberts' records "clearly indicates that [she] suffers from Bipolar Type II Disorder" as well as "sustained head injuries." Eisenberg Aff., R.12-5, PageID # 8688. "The bipolar condition," he stated, "most likely began in childhood." *Id.*

Additionally, affidavits and letters from Roberts' family members summarized what they would have said if they had been permitted to testify. *See* Raymond E-mail, R.12-5, PageID # 8606; Raymond Letter, R.12-5, PageID # 8689–95; Perry Aff., R.12-13, PageID # 10255–57; Raymond Aff., R.12-13, PageID # 10259–67. Roberts' younger sister, Janice Perry, explained that their mother suffered from severe depression, an illness that was passed down to both Perry and Roberts. *See* Perry Aff., R.12-13, PageID # 10255. Because of their mother's condition, Roberts essentially raised her little sister, and financially assisted her as she grew older. *Id.* Perry also confirmed that their father abused their mother, at one point chasing her with a gun. *Id.*

Roberts' son, Michael Raymond, described Roberts' life, her various charity works, and their relationship, which was generally very positive but grew more distant after her last car accident. Raymond Letter, R.12-5, Page ID # 8689–95;

Raymond Aff., R.12-13, PageID # 10259–67. The last car accident, Raymond stated, changed Roberts into a "different person." Raymond Letter, R.12-5, Page ID # 8692. "Sometimes she would be all excited and perky in tone, the next time down and depressed." *Id.* at PageID # 8692. Raymond confirmed that on at least one occasion, Fingerhut grabbed Roberts and shoved her to the ground, but otherwise they "were happier than any couple [he] had ever come across." *Id.* at PageID # 8693. He also stated that Roberts had even ordered several Chanukah gifts for Fingerhut only days prior to the crime, some of which arrived after Roberts was arrested. *Id.* at PageID # 8694. Raymond stated that he was devastated by the loss of Fingerhut and Roberts—"they were more than just parents to [him], they were also [his] friends whom [he] could talk to about anything and everything in [his] life." *Id.* at PageID # 8695.

## VI.    Federal habeas proceedings

When state-court proceedings concluded, Roberts filed a habeas-corpus petition in the Northern District of Ohio. *See* Petition, R.10. In her first ground for relief, she alleged that the trial court's refusal to permit her to introduce mitigating evidence at resentencing violated her clearly established Eighth and Fourteenth Amendment rights under *Lockett*. *Id.* at PageID # 94–109.

The district court denied all relief. Order, R.31. It held that the Ohio Supreme Court's resentencing exception was not contrary to *Lockett* and that the Sixth

18

Circuit's *Davis* decision did not apply because "Roberts was neither charged with, nor convicted of, future dangerousness" and "the evidence proffered at her resentencing would have been available at the time of her trial." *Id.* at PageID # 13110–14. But because "[a] reasonable jurist could debate the Court's conclusions regarding this claim," the district court issued a certificate of appealability. *Id.* at PageID # 13185.

Roberts then filed a timely notice of appeal. Not. of App., R.36.

## VII.    Nathaniel Jackson's proceedings

Nathaniel Jackson was convicted for the same crime and, after Jackson submitted some mitigating evidence, Judge Stuard sentenced him to death. *Jackson*, 111 F.4th at 693. When Judge Stuard's misconduct surfaced, Jackson moved for a new sentencing proceeding, which Judge Stuard denied. *Id.* at 694. The Ohio court of appeals, however, reversed. It held that, "[b]ased on the Supreme Court of Ohio's holding in *Roberts*, appellant is entitled to the same relief afforded to his co-defendant." *State v. Jackson*, 941 N.E.2d 1221, 1226 (Ohio Ct. App. 2010).

As in Roberts' case, Judge Stuard denied Jackson's motion to introduce mitigating evidence that he had not introduced at his first sentencing proceedings. *Jackson*, 111 F.4th at 694. These records included affidavits from Jackson's family members, psychological information, and school records. *Id.* Judge Stuard also denied Jackson's motion to recuse based on judicial bias. *Id.*

The Ohio Supreme Court affirmed the sentence, relying heavily on its prior opinion in Roberts' case that held that the *Lockett* rule did not apply to resentencing proceedings.  *State v. Jackson*, 73 N.E.3d 414, 427–30 (Ohio 2016).

Jackson then applied for habeas relief in the Northern District of Ohio.  Unlike in Roberts' case, the district court granted habeas relief on Jackson's *Lockett* claim. It found that, in denying Jackson relief, the Ohio Supreme Court "reject[ed] the core holdings of *Lockett*, *Eddings*, [and] *Skipper*."  *Jackson v. Houk*, No. 4:07-cv-00880, 2021 WL 698590, at *10 (N.D. Ohio Feb. 23, 2021).  By contrast, "the *Davis* Court correctly interpreted" those cases.  *Id.*  Thus, Jackson had met the requirements for habeas relief under 28 U.S.C. § 2254(d)(1).

Just last month, this Court affirmed the grant of habeas relief to Jackson.  In a published opinion authored by Judge Griffin, this Court held that "Jackson's sentencing proceeding was blatantly unconstitutional at its core due to the trial-court judge's bias and misconduct, as well as his exclusion at sentencing of relevant mitigating evidence."  *Jackson*, 111 F.4th at 692.  As for judicial bias, the court explained that "it is hard to imagine a more 'extreme' case of bias from ex parte contact than this one," given that "Judge Stuard secretly recruited the prosecutor to draft the entirety of an opinion sentencing Jackson *to death*."  *Id.* at 698.  As for the mitigation-evidence claim, the court explained that its prior holding in *Davis* was both correct and binding—"today we reiterate that *Lockett*, *Eddings*, and *Skipper*

20

require capital sentencing courts to consider any and all relevant mitigating evidence presented at the time of sentencing, with no exception for cases where prior sentencing proceedings had been held." *Id.* at 700.  Accordingly, the Ohio Supreme Court's resentencing exception "was an unreasonable application of and contrary to *Lockett* and its progeny." *Id.* at 704.  The court therefore granted habeas relief on both claims and remanded to the district court for further proceedings consistent with the opinion. *Id.*

On behalf of the Warden, the Attorney General then filed a petition for en banc review.  En. Banc Pet., *Jackson v. Cool*, No. 21-3207 (6th Cir.), Doc.63.  In it, the Warden admitted that the "holding in Jackson's case directly controls Roberts' case." *Id.* at Page 9; *see also id.* at Page 7 ("[T]his error will directly control the pending co-defendant's case (*Roberts*) . . .").  The full court denied en banc review. Order Denying En Banc, *Jackson v. Cool*, No. 21-3207 (6th Cir.), Doc. 64-1.

## SUMMARY OF THE ARGUMENT

The trial court barred Roberts from presenting mitigating evidence before it sentenced her to death.  That squarely violates the rule established in *Lockett* and its progeny.  In holding otherwise, the Ohio Supreme Court applied a resentencing exception that this Court has now twice concluded is contrary to, and an unreasonable application of, clearly established federal law pursuant to 28 U.S.C. § 2254(d)(1).  As this Court has explained, when a sentence is vacated and the trial

court is required to make a new choice between life and death, the *Lockett* rule directly applies and requires that the defendant be permitted to offer any mitigating evidence relevant to that decision. Roberts was denied that right here. And because her mitigating evidence is compelling, the *Lockett* error was far from harmless. Accordingly, binding precedent compels a new sentencing proceeding.

## ARGUMENT

"In reviewing a district court's denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254," this Court "review[s] all legal conclusions de novo." *Tolliver v. Sheets*, 594 F.3d 900, 915 (6th Cir. 2010). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court shall not grant a writ of habeas corpus on any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## I. The Eighth and Fourteenth Amendments guarantee the right to present relevant mitigating evidence at capital sentencings.

The Supreme Court has long explained a simple truth: "death is qualitatively different from a sentence of imprisonment, however long." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Because of this qualitative difference, "the

Eighth Amendment *requires* consideration of the character and record of the individual offender and the circumstances of the particular offense as a *constitutionally indispensable* part of the process of inflicting the penalty of death." *Id.* at 304 (emphases added) (internal citation omitted). As a corollary to that rule, the "failure to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death" violates the Eighth Amendment. *Id.* at 303. The Supreme Court in the 1976 decision of *Woodson v. North Carolina* applied these principles when it invalidated North Carolina's mandatory death penalty statute—because the statute "exclude[d] from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind." *Id.* at 304.

Two years later, the Court decided *Lockett v. Ohio*, 438 U.S. 586 (1978). At the time, Ohio's death penalty statute "did not permit the sentencing judge to consider, as mitigating factors, [the defendant's] character, prior record, age, lack of specific intent to cause death, and her relatively minor part in the crime." *Id.* at 597. Drawing on *Woodson* and earlier precedent, the Court explained that "an individualized [sentencing] decision is essential in capital cases" because "the imposition of death by public authority is so profoundly different from all other penalties." *Id.* at 605. Accordingly, it held that "the Eighth and Fourteenth

23

Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604 (emphasis omitted). Put another way, "[w]hen the choice is between life and death," the sentencer cannot be precluded from considering "factors which may call for a less severe penalty." *Id.* at 605. Because Ohio's statute transgressed that rule, it violated the Constitution.

The Court yet again reaffirmed these principles in 1985. In *Eddings v. Oklahoma*, the state courts had refused to consider evidence about the defendant's family history and emotional disturbance, deeming such evidence legally irrelevant. 455 U.S. 104, 108–09, 113–15 (1982). The Court held that these "limitations placed by these courts upon the mitigating evidence they would consider violated the rule in *Lockett*" as well as "the earlier decisions of the Court." *Id.* at 112–16. "Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence." *Id.* at 113–14 (emphasis omitted). Thus, the Court remanded for the state court to "consider all relevant mitigating evidence and weigh it against the evidence of the aggravating circumstances." *Id.* at 117.

A few years later, the Supreme Court in *Skipper v. South Carolina* again applied the "well established" rule from *Lockett* and *Eddings* that "the sentencer may

not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" 476 U.S. 1, 4 (1986). The "only question before" the court, however, was "whether the exclusion from the sentencing hearing of the testimony petitioner proffered regarding his good behavior during the over seven months he spent in jail awaiting trial deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment." *Id.* The Court answered yes—"a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." *Id.* at 7. Thus, "[u]nder *Eddings*, such evidence may not be excluded from the sentencer's consideration." *Id.* at 5.

This long lineage of precedent continued with *Hitchcock v. Dugger*, 481 U.S. 393 (1987). In an opinion authored by Justice Scalia, the Court held that "it could not be clearer" that the sentencing judge's refusal to consider "evidence of nonstatutory mitigating circumstances"—including the defendant's life history and family upbringing—"did not comport with the requirements of" *Skipper*, *Eddings*, and *Lockett*. *Id.* at 398–99. That "exclusion of mitigating evidence . . . render[ed] the death sentence invalid," and so the Court vacated the death sentence and ordered a new proceeding "at which petitioner is permitted to present any and all relevant mitigating evidence that is available." *Id.* at 399 (quoting *Skipper*, 476 U.S. at 8).

Since *Hitchcock*, the Supreme Court has repeatedly reaffirmed these

25

established principles.  It has time and again made clear that "[t]he Constitution requires States to allow consideration of mitigating evidence in capital cases" and "*[a]ny* barrier to such consideration must therefore fall." *McKoy v. North Carolina*, 494 U.S. 433, 442 (1990) (emphasis added and omitted).  "It is not relevant whether the barrier to the sentencer's consideration of all mitigating evidence is interposed by statute, by the sentencing court, or by evidentiary ruling." *Mills v. Maryland*, 486 U.S. 367, 375 (1988) (internal citations omitted).  The sentencer "must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual." *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007).

This precedent directly governs *re*sentencing proceedings in which the trial judge is again faced with "the choice . . . between life and death." *Lockett*, 438 U.S. at 605.  This Court has now twice so held.  In *Davis v. Coyle*, the Ohio Supreme Court vacated Davis's sentence and remanded to the trial court.  475 F.3d 761, 769 (6th Cir. 2007).  At resentencing, the trial court merely "reconsider[ed] the record from the earlier proceeding" and denied Davis the right to present mitigating evidence regarding "his post-sentence prison behavior and psychological profile." *Id.*  On appeal, the Ohio Supreme Court held that this limitation on mitigating evidence did not offend *Lockett* because "Davis had not been denied the opportunity to present all relevant mitigating evidence at his first sentencing trial." *Id.* at 770.

26

In granting habeas relief, the Sixth Circuit found that the Ohio Supreme Court's reasoning was "both an unreasonable application of the decision in *Skipper* and contrary to the holding in that opinion and its antecedent cases." *Id.* at 773. That line of cases, this Court stated, "requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing." *Id.* at 774. And Davis's post-sentence prison behavior was "relevant" mitigating evidence pursuant to *Eddings*. *Id.* at 773. This Court therefore found that Davis met the requirements of AEDPA, granted the writ, and vacated the death sentence. *Id.* at 775, 781.

As previewed above, this Court just last month came to the same conclusion in the case of Roberts' co-defendant, Nathaniel Jackson. This Court "reinforce[d] *Davis*'s correct analysis and follow[ed] its holding—which remains consistent with clearly established precedent and by which we are bound." *Jackson*, 111 F.4th at 702. It explained that, "given that Judge Stuard was instructed to 'evaluate the appropriateness of the death penalty' on remand, it is immaterial that the relevant proceeding was a *re*sentencing or that much of Jackson's proffered mitigating evidence was available (though not compiled or discovered) at the time of his first sentencing." *Id.* at 703–04 (internal citation omitted). "The bottom line is that Judge Stuard was again tasked with deciding whether to impose the death penalty on Jackson, so *Lockett*, *Eddings*, and *Skipper*'s general, clearly established standard

applied to Jackson's resentencing." *Id.* at 704. Thus, as in *Davis*, the Ohio Supreme Court's resentencing exception "violate[d] the principle clearly defined by *Lockett*, *Eddings*, and *Skipper*" and habeas relief was necessary. *Id.* at 703.

## II. Roberts was denied her right to present mitigating evidence at sentencing.

Application of the above principles to Roberts' case is straightforward. At Roberts' resentencing, the trial court was tasked with "the choice . . . between life and death." *Lockett*, 438 U.S. at 605. Thus, clearly established Supreme Court precedent required that Roberts be permitted to "present any and all relevant mitigating evidence that is available" at that time. *Hitchcock*, 481 U.S. at 399 (quoting *Skipper*, 476 U.S. at 8). Yet Roberts was barred from presenting relevant mitigating evidence at her resentencing—everything except for an unsworn statement in allocution. In both sentencing her to death and affirming the death sentence, the state courts all "refuse[d] to consider" her independent mitigating evidence. *Eddings*, 455 U.S. at 114. That transgressed the Eighth and Fourteenth Amendments. *Id.*

The State has never contested that Roberts' proffered evidence is "relevant" mitigating evidence under *Lockett* and its progeny. Nor could it. When the Supreme Court has addressed "the relevance standard applicable to mitigating evidence in capital cases," the Court has spoken "in the most expansive terms." *Tennard v. Dretke*, 542 U.S. 274, 284 (2004). "Relevant mitigating evidence is evidence which

28

tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." *Id.* "Once this low threshold for relevance is met, the 'Eighth Amendment requires that the [sentencer] be able to consider and give effect to' a capital defendant's mitigating evidence." *Id.* at 285. The evidence Roberts submitted is both relevant and compelling, and much of it did not exist at Roberts' first sentencing proceedings four years earlier. *See supra* at 16–17; *infra* at 41–45. Indeed, the state court here agreed that this information "[u]nquestionably" was "relevant to mitigation." *Roberts*, 998 N.E.2d at 1113. Supreme Court precedent therefore required its consideration.

And nothing in that precedent supports an exception for when the defendant's death sentence has been vacated and the trial court must determine a new sentence. In fact, the precedent expressly *contradicts* such an exception. By its own terms, *Lockett* applies whenever a sentencer must make a choice "between life and death." *Lockett*, 438 U.S. at 605; *see also Sumner v. Shuman*, 483 U.S. 66, 76 (1987) ("[T]he Eighth and Fourteenth Amendments require that the sentencing authority be permitted to consider *any* relevant mitigating evidence *before imposing a death sentence*." (emphases added)). Where an appellate court vacates a death sentence and orders the trial court to make a new sentencing determination, that is precisely the choice before the trial court. This was not, as the Warden suggests, a situation where a case is remanded for the sentencer to correct a formality in announcing a

29

sentence *already chosen*—for example, a remand to require the defendant's presence during the reading of the sentence or to remove a separate sentence. *See* En. Banc Pet., *Jackson v. Cool*, No. 21-3207 (6th Cir.), Doc.63, Page 11. Rather, the trial court here was required to make a new "choice between life and death"—the Ohio Supreme Court ordered it to "determine anew the appropriateness of the death penalty," given that the prior sentence was infected by constitutional error. *Roberts*, 850 N.E.2d at 1190. Accordingly, clearly established Supreme Court law required the trial court to consider Roberts' proffered mitigating evidence.

And that is not all. Any contrary argument directly clashes with this Court's binding precedent. Both *Davis* and *Jackson* rejected the same resentencing exception that the Ohio Supreme Court applied here. As published opinions, those decisions bind this Court. *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *see also Tolliver*, 594 F.3d at 916 n.6 ("We are bound by prior Sixth Circuit determinations that a rule has been clearly established" for purposes of AEDPA). The Warden agrees, conceding that the "holding in Jackson's case directly controls Roberts' case." En. Banc Pet., *Jackson v. Cool*, No. 21-3207 (6th Cir.), Doc.63, Pages 7, 9. And, as explained above, those holdings are also correct—"the Supreme Court has clearly established that when a trial court is determining whether to impose the death penalty, capital defendants have a right to present any and all relevant mitigating evidence supporting a sentence less than death, including at resentencing

30

proceedings." *Jackson*, 111 F.4th at 693; *see also Sivak v. State*, 731 P.2d 192, 194 (Idaho 1986) (agreeing that *Lockett* applies to resentencing proceedings).

### III. The Ohio Supreme Court's resentencing exception is contrary to, and an unreasonable application of, clearly established federal law as determined by the Supreme Court.

The state court rejected Roberts' claim because *Lockett* and its prodigy "involved the trial court's exclusion of, or refusal to consider, evidence in the original sentencing hearing" as opposed to "a proceeding on remand." *Roberts*, 998 N.E.2d at 1108. In other words, it held that *Lockett* does not apply once an individual has had one chance to present mitigation evidence at a prior sentencing proceeding (even if the new evidence did not exist at that time). *Id.* Again, this Court in *Davis* and *Jackson* already held that such a resentencing exception "violates the principle clearly defined by *Lockett*, *Eddings*, and *Skipper*." *Jackson*, 111 F.4th at 703; *Davis*, 475 F.3d at 764. The Ohio Supreme Court's decision is therefore both contrary to, and an unreasonable application of, clearly established federal law pursuant to 28 U.S.C. § 2254(d)(1). *Id.*

Consider first the "contrary to" prong of § 2254(d)(1). A state-court decision is "contrary to clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at' an opposite result." *Carter v. Mitchell*, 829 F.3d 455, 468

(6th Cir. 2016) (brackets omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "Here, the relevant question of law—whether the trial court must consider all relevant mitigating evidence when determining a sentence in capital proceedings—is one that the Supreme Court has squarely answered." *Jackson*, 111 F.4th at 703. The Supreme Court answered yes, but the Ohio Supreme Court answered no. *Id.* Accordingly, the Ohio Supreme Court "reached a conclusion opposite to that of the Supreme Court." *Id.* And, as explained above, there is no constitutional difference between sentencing proceedings and resentencing proceedings, given that the *Lockett* rule focuses on evidence that could affect the choice between life and death—a choice that is just as relevant at resentencing. *Id.*

The Ohio Supreme Court also "unreasonably applied" the law to Roberts' case. 28 U.S.C. § 2254(d)(1). A state court employs an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Again, the Supreme Court has clearly held that "trial courts may not refuse to consider any relevant mitigating evidence in death-penalty cases" and "in turn, that capital defendants may present 'any and all relevant mitigating evidence that is available' at the time the court is considering whether to impose the death penalty." *Jackson*, 111 F.4th at 702 (citing *Eddings*, 455 U.S. at 115 and

quoting *Skipper*, 476 U.S. at 5). Here "the trial court was considering whether to impose the death penalty at [Roberts'] resentencing, yet it prevented [her] from presenting relevant mitigating evidence." *Id.* at 702–03.

Moreover, the Ohio Supreme Court's stated rationales for its resentencing exception are themselves unreasonable and have already been rejected by this Court.

First, the state court reasoned that the prior sentencing error occurred "after the jury had returned its recommendation of death," and "the correct procedure was for the trial court to 'proceed on remand from the point at which the error occurred.'" *Roberts*, 998 N.E.2d at 1110. But this same argument did not sway this Court in *Jackson*. *See* Third Br. of Warden, *Jackson v. Houk*, No. 21-3207 (6th Cir.), Doc.47, Pages 41. And for good reason. The Ohio Supreme Court failed to explain why its point-of-error rule matters to the *Lockett* inquiry. For instance, it cited nothing that prevents the trial judge from receiving evidence *after* the jury has made its recommendation. Ohio law in fact suggests the opposite. Ohio's death penalty statute *requires* the trial court to hear evidence—separate from and in addition to—the jury's duty to hear evidence: "The court, **and** the trial jury if the offender was tried by a jury, . . . shall hear testimony and other evidence that is relevant to" the statutory mitigating factors "and any other factors in mitigation of the imposition of the sentence of death." Ohio Rev. Code § 2929.03(D)(1) (emphasis added). Reinforcing the point, the statute commands that "[t]he defendant shall be given

33

great latitude in the presentation of [mitigating] evidence." *Id.* Thus, nothing prevents the trial judge from hearing evidence after the jury has made its recommendation.

And even if there *were* such a state rule, it would yield to the Constitution. *See Mills*, 486 U.S. at 375 ("It is not relevant whether the barrier to the sentencer's consideration of all mitigating evidence is interposed by statute, by the sentencing court, or by evidentiary ruling." (internal citations omitted)). After all, in Ohio, the jury recommends a sentence; whereas the judge makes the ultimate decision. *See* Ohio Rev. Code § 2929.03(D)(2), (3); *see also State v. Kirkland*, 157 N.E.3d 716, 728 (Ohio 2020) ("A jury's verdict in favor of death *is* a recommendation, since the judge may impose a life sentence even if the jury recommends death."). Thus, it matters what evidence *the judge* considers when sentencing the defendant to death. *See Smith v. Spisak*, 558 U.S. 139, 144 (2010) (stating that the "sentencing judge" cannot refuse to consider mitigating evidence); *cf.*, *Spaziano v. Singletary*, 36 F.3d 1028, 1032 (11th Cir. 1994) ("Spaziano was resentenced, and what matters is what the trial judge thought and did at that resentence proceeding, not at initial sentencing."). And *Lockett* clearly requires the judge to consider the defendants' proffered mitigating evidence before making that decision. Accordingly, the state court's point-of-error rationale offers no support for its resentencing exception.

Second, the state court suggested that "[e]stablishing a right to update

34

mitigation could result in arbitrary distinctions between similarly situated capital defendants" because a "defendant who had an error-free mitigation hearing could not update his mitigation . . . if the trial judge committed no error *after* the mitigation hearing that called for the case to be remanded," whereas "another defendant, whose mitigation hearing was equally free of error, *would* have the right to update his mitigation in the event that a posthearing sentencing error took place that required a remand." *Roberts*, 998 N.E.2d at 1108. But this argument, again, was made in *Jackson* to no avail. *See* Br. of Warden, *Jackson v. Houk*, No. 21-3207 (6th Cir.), Doc.32, Page 22.

And it is unpersuasive for several reasons. As an initial matter, it is unclear why any defendant would be treated disparately. As explained above, *any* "defendant who had an error-free mitigation [jury] hearing" is free to present evidence to the trial judge post-recommendation. Regardless, a defendant whose death sentence has never been vacated is not "similarly situated" to a defendant whose death sentence has been vacated and whose judge must determine a new sentence. The first is under a sentence of death and the second is not. Again, that makes the constitutional difference under *Lockett*. And to the extent the state court takes issue with that, the problem is of its own making—it rendered an unconstitutional sentence the first time around. Moreover, if anything imposes "arbitrary" and unconstitutional distinctions between defendants, it is the Ohio

Supreme Court's resentencing exception.  Applying that rule, the first defendant would have a death sentence that is informed by the relevant mitigating evidence that she sought to introduce at the time of the sentence, and the second defendant would not.

Third, the state court predicted that applying *Lockett* to resentencing proceedings would mean that a defendant would have the right to present new evidence to an *appellate* court, given that appellate courts in Ohio independently review the death sentence and so "could be considered a 'sentencer' for *Lockett* purposes." *Roberts*, 998 N.E.2d at 1108–09.  This rationale was, again, unsuccessful in *Jackson* and it, too, is unreasonable.  Br. of Warden, *Jackson v. Houk*, No. 21-3207 (6th Cir.), Doc.32, Page 34.  The trial court was, by any definition of the word, the "sentencer" under *Lockett*.  Before the trial court's decision, Roberts had no sentence; after that decision, she was under a sentence of death.  *Lockett* makes this clear:  the "sentencing judge" has the "duty of *imposing* a proper sentence," and must consider all relevant mitigation in discharging that duty.  *Lockett*, 438 U.S. at 603 (emphasis added) (brackets omitted) (quoting *Williams v. Oklahoma*, 358 U.S. 576, 585 (1959)).  By contrast, appellate courts *affirm or reverse* death sentences that *have already been imposed*.  *See* Ohio Rev. Code § 2929.05(A) ("Whenever [a] sentence of death is imposed . . . the supreme court shall review upon appeal the sentence of death.").  So applying *Lockett* to resentencing proceedings says nothing

about whether appellate courts are *Lockett* sentencers.  (Confirming this, *Davis* has been the law of this Circuit since 2007 and yet courts are *not* applying *Lockett* to appellate proceedings).

Finally, the state court's unreasonableness is further underscored by the fact that it did not even apply its resentencing exception consistently.  At Roberts' resentencing, she *was* permitted to give an unsworn statement in allocution—and "an unsworn statement can constitute critical mitigating evidence."  *Roberts*, 850 N.E.2d at 1186.  That means the resentencing court allowed Roberts to present some mitigating evidence (in the form of an unsworn statement) but disallowed her to present other mitigating evidence (in the form of documentation and sworn testimony).  And after the trial court's resentencing opinion failed to discuss the unsworn statement, the Ohio Supreme Court found that such failure violated *Lockett*: "Unquestionably, the allocution contained information relevant to mitigation" and "[t]he court could not, therefore, refuse to consider it."  *Roberts*, 998 N.E.2d at 1113. That holding makes little sense if, as the Ohio Supreme Court also held, Roberts was *not* "entitled [] to introduce mitigating evidence before the trial judge on remand." *Id.* at 1106.

In the end, then, the Ohio Supreme Court's decision is contrary to, and an unreasonable application of, clearly established Supreme Court precedent.

37

**IV.    The District Court's reasoning is wrong and conflicts with this Court's binding precedent.**

The district court's separate reasons for denying Roberts' claim are equally unpersuasive and likewise contravene binding precedent.

First, the district court distinguished *Davis* and *Skipper* because "the evidence Roberts proffered at her resentencing would have been available at the time of her trial and she could have introduced it then had she not waived her right to present mitigation evidence." Order, R.31, PageID # 13112. But that is both factually wrong and legally irrelevant.

It is factually wrong because Roberts *did* present evidence at her resentencing that was *not* "available at the time of" her first sentencing proceedings four years prior. *Id.* Much of the evidence she presented—her prison records, for example— *did not exist* at that time. *See supra* at 16–17. Her purported "waiver" at her first sentencing is therefore irrelevant, because she could not have waived the presentation of evidence that did not yet exist. *See, e.g.*, *State v. Gilbert*, 35 N.E.3d 493, 495 (Ohio 2014) ("[A] defendant cannot waive that which does not exist.").[2]

---

[2] The state court did not rely on Roberts' waiver in rejecting her Eighth Amendment *Lockett* claim. It *did* discuss the waiver when addressing arguments, made by the concurrence, that Judge Stuard failed to comply with the remand order in Roberts' first appeal. *Roberts*, 998 N.E.2d at 1109–11. The concurrence argued that Roberts' request to present mitigation evidence was consistent with the remand order because she was not attempting to "update" her mitigation, as she "proffered four items in mitigation, only one of which dealt with her conduct in prison." *Id.* at 1110, 1119. The majority responded that, because of her prior waiver, "the case for admitting

And even if the district court were correct in finding that Roberts presented only evidence that was previously available (it was not), that would be legally irrelevant. At Roberts' resentencing, Roberts had the right to present any evidence that existed at the time, "regardless of . . . when the mitigation evidence was discovered." *Jackson*, 111 F.4th at 704. This Court in *Jackson* recognized that "it is immaterial" that "much of Jackson's proffered mitigating evidence was available (though not compiled or discovered) at the time of his first sentencing." *Id.* at 703–04. "The bottom line is that Judge Stuard was again tasked with deciding whether to impose the death penalty" on the defendant, "so *Lockett*, *Eddings*, and *Skipper*'s general, clearly established standard applied to [the] resentencing." *Id.* at 704.

Because it does not matter *whether* evidence was available (yet not presented) at the first sentencing proceedings, it also does not matter *why* that evidence was not presented. Both Jackson and Roberts presented *some* mitigation in their first sentencing proceedings—Jackson through independent testimony and Roberts through an unsworn statement. *See Roberts*, 850 N.E.2d at 1186 (finding that Roberts entered only "a partial waiver of the right to present mitigating evidence" because she presented an unsworn statement, which "can constitute critical

---

proffered mitigation involving events that took place before trial is, if anything, weaker than the case for admitting posttrial prison records." *Id.* at 1111. In other words, the state court implicitly recognized that any waiver was inapplicable to the post-trial prison records.

mitigating evidence"). They both then declined to present other mitigation evidence that they could have presented. That one did so out of inadvertence and the other through an expressed desire is irrelevant. Indeed, in admitting that *Jackson* "directly controls" this case, the Warden agrees that this is a distinction without a constitutional difference. En. Banc Pet., *Jackson v. Cool*, No. 21-3207 (6th Cir.), Doc.63, Pages 7, 9.

Second, the district court refused to apply *Lockett* and its progeny to Roberts because "Roberts was neither charged with, nor convicted of, future dangerousness." Order, R.31, PageID # 13112. But that reasoning is entirely divorced from *Lockett* and *Eddings*, neither of which involved a due-process right to rebut an argument about future dangerousness. Rather, those cases held that the Eighth Amendment requires "that in capital cases, the sentencer may not refuse to consider or be precluded from considering *any* relevant mitigating evidence." *Hitchcock*, 481 U.S. at 394 (internal quotation marks omitted) (emphasis added). And relevant mitigating evidence is not limited to evidence rebutting future dangerousness—it is anything that "is of such a character that it 'might serve as a basis for a sentence less than death.'" *Tennard*, 542 U.S. at 287 (quoting *Skipper*, 476 U.S. at 4–5).

True, the Court in *Skipper* noted, in a footnote, that the trial court *additionally* violated the defendant's due-process rebuttal right under *Gardner v. Florida*, 430 U.S. 349 (1977). *See Skipper*, 476 U.S. at 5 n.1 ("Where the prosecution specifically

relies on a prediction of future dangerousness in asking for the death penalty, it is *not only* the rule of *Lockett* and *Eddings* that requires that the defendant be afforded an opportunity to introduce evidence on this point; it is *also* the elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.'" (emphases added)). But that was *alternative* to its holding that the trial court violated the defendant's Eighth Amendment rights under *Lockett* when it "deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment." *Id.* at 4. The Warden agrees with this reading of *Skipper*, stating that the rebuttal-right footnote "arguably constitutes *dicta*, as it was unnecessary for the disposition." Warden Br., *Jackson v. Shoop*, No. 21-3207 (6th Cir.), Doc.32, Page 29.

This Court's cases also confirm the point. In *Davis*, the court discussed future dangerousness in noting that the evidence was *relevant* mitigation evidence that was required to be considered under *Lockett*, *Eddings*, and *Skipper*. *Davis*, 475 F.3d at 771–75. Again, all agree that Roberts' evidence qualifies as "relevant" mitigation evidence under that precedent. And in *Jackson*, this Court did not discuss a rebuttal right at all, instead squarely anchoring its holding in *Lockett* and its progeny. *Jackson*, 111 F.4th at 699–704.

Accordingly, the district court's reasons for denying habeas relief are wrong and contradict binding precedent.

41

**V.    The *Lockett* violation was not harmless.**

No one—not the prosecutors, not the Warden, not the state courts, not the district court—has ever suggested that a *Lockett* error (if proved) was harmless.  The prosecutor in Roberts' case has, in fact, stated the opposite.  In sworn testimony before the Ohio Supreme Court during his disciplinary proceedings, prosecutor Christopher Becker stated: "Ms. Roberts had no criminal record" and had "never been to prison," so "[p]robably if she'd presented any mitigating evidence, the jury and the judge would not have sentenced her to death."  Disciplinary Hearing Tr., *Jackson v. Houk*, No. 4:07-cv-00880-JG (N.D. Ohio), R.47-8, PageID # 10709.  He later reiterated that Roberts was not "the shooter" and therefore "would have never gotten death row if she put on a defense."  *Id.* at PageID # 10728.

In such cases, where the Warden "has made no attempt to argue that this error was harmless, or that it had no effect on the jury or the sentencing judge," Supreme Court cases "hold that the exclusion of mitigating evidence of the sort at issue here renders the death sentence invalid."  *Hitchcock*, 481 U.S. at 399; *see also Abdul-Kabir*, 550 U.S. at 264–65 (where *Lockett* error occurs "the sentencing process is fatally flawed" and habeas relief is warranted); *Jackson*, 111 F.4th at 704 (affirming the district court's grant of habeas petition for *Lockett* claim where Warden made no argument about harmless error).  To the extent the Court disagrees, and thinks a harmless-error analysis is necessary, it could remand to the district court to make the

determination in the first instance.  *See Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 404 (6th Cir. 2020) ("Because this is a court of review, not of first view, we remand the case to the district court to resolve these issues in the first instance." (cleaned up)).  The district court would then review the issue de novo, given that the state court did not adjudicate it.  *Smith v. Cook*, 956 F.3d 377, 392 (6th Cir. 2020).

Regardless of approach, it is beyond dispute that the *Lockett* error was not harmless.  The evidence regarding Roberts' troubled upbringing, history of sexual abuse, her relationship to her sister and son, her charity work, her car accidents, and her mental health problems, including her bipolar diagnosis, is all classic (and powerful) mitigation evidence.  "[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse."  *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989).  Indeed, the Ohio legislature has recently determined that bipolar disorder is a "serious mental illness" such that someone suffering from it at the time of the crime is ineligible for the death penalty.  *See* Ohio Rev. Code § 2929.025(A)(1).  This diagnosis also would have provided the necessary context for Roberts' correspondence with Jackson, her behavior following Fingerhut's death, and her actions at trial.  *See supra* at 5–7.

Yet the state courts considered *none* of this independent mitigating evidence. *See supra* at 10–14. Courts do not hesitate to find prejudice in those circumstances. *See Thornell v. Jones*, 144 S. Ct. 1302, 1314 (2024) (compiling cases finding prejudice where "little, if any, mitigating evidence" was presented at sentencing).

And Roberts' unsworn statements were no substitute for this independent mitigating evidence. As explained above, the state courts discounted the information in her unsworn statements as uncorroborated. *See supra* at 13–14. The detailed documentation she proffered, however, would have verified that information. *Supra* at 14–18. And where this type of third-party evidence is missing, such an error is not harmless. *See, e.g.*, *Skipper*, 476 U.S. at 8 (finding prejudice where the "evidence petitioner was allowed to present . . . was the sort of evidence that a jury naturally would tend to discount as self-serving" whereas the evidence petitioner was not allowed to present was "more disinterested" and therefore "would quite naturally be given much greater weight by the jury"); *Mapes v. Coyle*, 171 F.3d 408, 426 (6th Cir. 1999) (finding that prejudice was "almost self-evident" when "even the little mitigation presented—Mapes's unsworn statement—could have been significantly corroborated by the evidence later gathered by Mapes's present counsel").

On the other end of the scale, the State's aggravation case against Roberts was modest—as Roberts' own prosecutors recognized. *Supra* at 42. She had no criminal

history of violence, and the crime did not involve multiple or child victims. *See* Ohio Rev. Code § 2929.04(A). And, importantly, she was not the principal offender. In Ohio, "the fact that a defendant was not the principal offender" is "a powerful mitigating factor" because "[v]ery few death sentences have been approved against persons who were not the principal offender." *State v. Green*, 738 N.E.2d 1208, 1224 (Ohio 2000). Accordingly, the *Lockett* error was anything but harmless.

## CONCLUSION

Clearly established Supreme Court precedent, as well as binding precedent from this Court, compels new sentencing proceedings for Roberts. Accordingly, this Court should reverse the district court's denial of habeas relief.

Respectfully submitted,
STEPHEN C. NEWMAN (0051928)
FEDERAL PUBLIC DEFENDER

*/s/ Calland M. Ferraro*
Calland M. Ferraro (0093439)
Assistant Federal Public Defender
Jillian S. Davis (0067272)
Research and Writing Attorney
Office of the Federal Public Defender,
Northern District of Ohio
Capital Habeas Unit
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 (o); (216) 522-1951 (f)
Calland_Ferraro@fd.org
Jillian_Davis@fd.org

*Counsel for Donna Roberts*

45

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), and the type-volume requirements of Federal Rule of Appellate Procedure 32(a)(7) and Sixth Circuit Rule 32(b)(2) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman style, 14-point font, and contains 10,915 words.

*/s/ Calland M. Ferraro*
Calland M. Ferraro

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/ Calland M. Ferraro*
Calland M. Ferraro

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

In accordance with Sixth Circuit Rule 30(g)(1), Petitioner-Appellant Donna Roberts hereby designates as "Relevant District Court Documents" the following documents filed in the District Court (No. 4:21-cv-00368 (N.D. Ohio)) and available via that court's electronic CM/ECF system:

| Record Entry No. | Description of Document | PageID # Range |
|---|---|---|
| 10 | Petition for Writ of Habeas Corpus | 33–182 |
| 11-3 | Trial Transcript | 5334–6661 |
| 11-4 | Resentencing Transcript (2006 & 2007) | 6662–6739 |
| 11-4 | Second Resentencing Transcript (2014) | 6758–6800 |
| 12-2 | Jury Death Penalty Recommendation | 8030–8032 |
| 12-2 | Trial Court Sentencing Opinion (2003) | 8046–8062 |
| 12-5 | Defendant's Motion for Appropriation of Funds for Expert Assistance | 8539–8542 |
| 12-5 | Defendant's Motion to Allow Full Presentation of Mitigation at Sentencing Rehearing | 8558–8563 |
| 12-5 | State's Opposition to Motion to Allow Full Presentation of Mitigation | 8566–8569 |
| 12-5 | Order Denying Motion to Present Mitigation Evidence | 8585 |
| 12-5 | Motion to Proffer Evidence with Appendix | 8587–8700 |
| 12-5 | Defendant's Sentencing Memorandum (2007) | 8708–8711 |
| 12-5 | Resentencing Opinion (2007) | 8712–8735 |
| 12-8 | Second Resentencing Opinion (2014) | 9198–9220 |
| 12-13 | Defendant's Postconviction Petition | 10202–10246 |
| 12-13 | Appendix to Defendant's Postconviction Petition | 10247–10398 |
| 12-16 | State Trial Exhibits 1 through 269 | 10746–10931 |
| 12-17 through 12-23 | State Trial Exhibits (Letters) | 10932–12276 |
| 12-24 | State Trial Exhibits 275A through 408, | 12277–12771 |

|    | Defense Exhibits, Joint Exhibits, and Court's Exhibits |    |
|----|----|----|
| 15 | Warden's Answer to Habeas Petition | 12841–12900 |
| 24 | Petitioner's Traverse | 12932–13006 |
| 26 | Warden's Sur-reply to Traverse | 13009–13045 |
| 31 | Memorandum of Opinion and Order Dismissing Habeas Petition | 13066–13185 |
| 32 | Petitioner's Motion to Amend Judgment | 13186–13192 |
| 33 | Warden's Opposition to Motion to Amend Judgment | 13193–13197 |
| 34 | Reply in Support of Motion to Amend Judgment | 13198–13202 |
| 35 | Memorandum of Opinion and Order Denying Motion to Amend Judgment | 13203–13206 |
| 36 | Notice of Appeal | 13207–13209 |